UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISRAEL CORTEZ,<br><br>              Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>              Defendant. | **Case No. 1:15-cv-00102-EPG**<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**I.     INTRODUCTION**

Plaintiff, Israel Cortez ("Plaintiff"), seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") pursuant to Titles II and XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Erica P. Grosjean, United States Magistrate Judge.[1] Upon a review of the administrative record, the Court finds the ALJ's decision is not supported by substantial evidence and the case is remanded to the agency for further proceedings.

///

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Doc. 9 and 11).

## II.   BACKGROUND AND PRIOR PROCEEDINGS

Plaintiff filed applications for DIB and SSI in October 2012, alleging a disability onset date of February 28, 2003. AR 210-213; 214-223.[2] Both applications were denied initially in June 2013, and on reconsideration in August 2013.  AR 131; 135; 143; 149.  A hearing was conducted before Administrative Law Judge Trevor Skarda ("ALJ") on May 6, 2014.  AR 38-70. On July 16, 2014, the ALJ issued a decision finding that Plaintiff was not disabled. AR 25-33. The Appeals Council denied Plaintiff's appeal, rendering the order the final decision of the Commissioner. AR 1-5.

Plaintiff now challenges that decision, arguing that: (1) the ALJ failed to give legally sufficient reasoning in rejecting the treating opining of Dr. Jorge Urbina, M.D., and (2) the ALJ did not provide legally sufficient reasons for finding Plaintiff not fully credible.  (Doc. 19, pgs. 6-14). Plaintiff argues that the Court should reverse and remand with instructions to award benefits. In the alternative, Plaintiff contends the case should be remanded for further administrative proceedings. (Doc. 19, pg. 16).  In opposition, Defendant argues: (1) that the ALJ properly evaluated the medical evidence of record, giving greater weight to Dr. Chandler's opinion than to Dr. Urbina's opinion; and (2) the ALJ properly evaluated Plaintiff's subjective symptom testimony. (Doc. 24, pgs. 6-10).

### A.  Plaintiff's Testimony

The hearing was held in Stockton, California. AR 38. Plaintiff and a vocational expert, Stephen Schmidt, testified.  AR 38.  Plaintiff was 56 years old at the time of the hearing. AR 46. He earned a GED in 2000 while incarcerated. AR 46. At the time of the hearing, Plaintiff was enrolled in Modesto Junior College and was receiving special accommodations, i.e. private room for testing. AR 46-47. However, he was unable to maintain being enrolled in four classes. AR 47-48.

Plaintiff reported having a history of drug and alcohol use but stopped "using" and "drinking" about 10 years ago. AR 52-53. He attributes the outset of his mental health condition to suffering from verbal, physical, and sexual abuse as a child. AR 55. He has lost over 100 jobs

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

as a result of being uneasy, angry, and unfocused due to his mental health condition. AR 54. He testified he would become violent and angry in a work environment, even while on medication and undergoing counseling. AR 58-59.

### B. Medical Record

#### i. Gardner Family Care Corp.

Plaintiff participated in mental health services at Gardner Family Care Corp. (GFCC) from December 2009 to December 2010. AR 373. Treatment plans dated March 2010 and June 2010 describe Plaintiff as presenting with depressed mood, anger problems, weight gain, hypersomnia, history of suicidal ideations as a teenager, and hopelessness. AR 379-380. In July 2010, Plaintiff's chief complaint was being scared all the time and angry. AR 374. However, the psychiatric evaluation describes his mood only as sad. AR 376. Plaintiff reported using medically prescribed marijuana daily since September 2009 to ease his pain from Hepatitis C treatment. AR 375; 377.

#### ii. Stanislaus Behavioral Health

During a psychiatric consultation at Stanislaus Behavioral Health in November 2012, Plaintiff reported he slept most of the time, had no energy, and felt hopeless and helpless for years. AR 369. He also reported feeling angry and anxious depending on the situation. AR 369. SSRI's and therapy/anger management were recommended. AR 370.

In April, 2013, Plaintiff denied suicidal intent but reported feeling like he wanted to die. AR 395. Plaintiff also reported hearing voices and smoked marijuana to calm himself down. AR 396. Rachel Acosta, M.F.T., described Plaintiff as appearing paranoid and becoming confused and irrational when attempting to talk about his thoughts. AR 396. Acosta also described Plaintiff as sincere, hopeful, and pleasant. AR 396. During a mental status examination, Plaintiff had decreased motor activity that was tense and teary, decreased speech, poor concentration, poor judgement, and poor impulse control. AR 398. However, Plaintiff was oriented to person, time and place, had directed flow of thought, normal memory, and average intellect. AR 398.

In June 2013, Plaintiff was not taking medication and complained of depression with suicidal ideation, anger issues, paranoia, auditory hallucinations, and thoughts of violence. AR

3

390. Medication was prescribed. AR 391. In July 2013, Plaintiff claimed the medication was helping and did not produce any side effects. AR 388; 394. He complained of paranoia but denied auditory hallucinations. AR 388. At a check-up in September 2013, Plaintiff was still taking medication and denied both auditory hallucinations and paranoia. AR 406.

In January 2014, Plaintiff had his initial visit with Dr. Urbina. AR 405. Dr. Urbina reports that Plaintiff claimed to be taking medication but the pharmacy confirmed Plaintiff had not picked up the medication prescribed to him three months earlier. AR 405. Plaintiff complained of depressed mood, lack of motivation, and some level of frustration. AR 405. At a February 2014 follow-up visit, Plaintiff reported he was compliant with medication. AR 404. Dr. Urbina did not report any complaints and described Plaintiff's mood as "better." AR 404. In March 2014, Plaintiff claimed to be compliant with medication. AR 403. Dr. Urbina did not report any complaints and described Plaintiff's mood as euthymic. AR 403.

Additionally, Dr. Urbina completed a medical opinion questionnaire in February 2014, while Plaintiff was on medication. AR 407; 404. Dr. Urbina states that Plaintiff has frequent anger outbursts resulting in violent behaviors and impaired ability to maintain concentration and attention. AR 407. Dr. Urbina diagnosed Plaintiff as suffering from chronic major depressive disorder and post-traumatic stress disorder. He opined that exposing Plaintiff to the stress and pressures of an eight-hour workday and day-to-day activities may result in severe decompensation. AR 407.

   *iii.* *Consultative Examiners*

Dr. Clark E. Gable, M.D., performed a consultative evaluation of Plaintiff on April 23, 2013. AR 381-382. At this visit, Plaintiff reported he was not taking any psychiatric medications, had been clean from alcohol for two years, and clean from drugs for five years. AR 381. Dr. Gable described Plaintiff's mood as quite good and upbeat, and noted it was "interesting" that at Plaintiff's prior mental health evaluation he presented with depressive symptoms, anger problems, weight gain, hypersomnia, and was helpless. AR 382. Dr. Gable noted Plaintiff seemed to be doing well with seeing a mental health worker weekly. AR 382. Dr. Gable opined Plaintiff could sit up to eight hours a day and stand/walk up to six hours a day with usual breaks, as well as

4

lift, push or pull at least 25 pounds frequently and 50 pounds occasionally. AR 382.

Dr. Jacklyn Chandler, Ph.D., performed a consultative psychological evaluation of Plaintiff on April 25, 2013. AR 384-386. Plaintiff reported he was not currently taking medication to treat his depression or anxiety, but was attending therapy. AR 382. He also reported quitting all drug usage in 2000 and alcohol in 2010. AR 385. Dr. Chandler noted it was unclear to what extent Plaintiff's psychiatric symptoms may be due to, or exacerbated by, his substance abuse. AR 386. He was able to do most activities of daily living, with restrictions related to anxiety. AR 385. He reported being unable to take a bus by himself or go grocery shopping unattended, but he was able to drive a car, do simple household chores, and groom himself. AR 385. Dr. Chandler noted Plaintiff was alert, oriented, had clear and coherent speech, linear thought process with logical content, no delusions or hallucinations, and had a mildly dysphoric mood. She opined Plaintiff's judgement may be compromised given his history. AR 385. Dr. Chandler further opined that Plaintiff's attention and concentration skills were moderately impaired, he had moderate difficulty enduring stress, and mild difficulty interacting appropriately. AR 385-386.

**III. THE DISABILITY DETERMINATION PROCESS**

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§

404.1502(a)-(f), 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.920(a)(4) and 404.1502(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 404.1527, 416.1529, 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[3] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his or her past relevant work,[4] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 33. In particular, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 28, 2003, the alleged onset date. AR 27. Further, the ALJ identified Post Traumatic Stress Disorder (PTSD), major depressive disorder, and Attention Deficit Hyperactive Disorder (ADHD) as severe impairments. AR 27. The ALJ also determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 27-28.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform on simple, routine, and repetitive tasks, perform low stress work (as defined as only occasional decision making and occasional changes in the work setting), and occasionally interact with the public and

---

[3] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.920(c).

[4] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

6

coworkers.

AR 29.

The ALJ determined Plaintiff had no past relevant work. AR 32. Based on this RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as hand packer and store laborer.  AR 32.

## IV. STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## V. DISCUSSION

### A. The ALJ's Decision is Not Supported by Substantial Evidence

Plaintiff argues that the ALJ failed to give sufficient reasons to reject the opinion of his treating physician, Dr. Urbina.  Defendant contends that the ALJ's evaluation of the medical evidence was proper.  A review of the record reveals that the medical record was not fully developed and as such, the ALJ's analysis of the physician opinions and Plaintiff's RFC is not supported by substantial evidence.

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in disability determinations. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Generally, the opinion of a treating physician is afforded the greatest weight. *Id*.

7

An examining physician's opinion is, in turn, given more weight than the opinion of a non-examining physician. 20 C.F.R. § 404.1527(d)(2); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).

However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas*, F.3d at 956–957; *also see Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). For example, the ALJ may reject the opinion of an examining physician in favor of a conflicting opinion of another examining or treating physician if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation and internal quotation marks omitted). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*. (citation and quotation omitted). The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *See id.*; *Morgan*, 169 F.3d at 600. The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *See Matney*, 981 F.2d at 1019.

The ALJ improperly rejected Dr. Urbina's opinion on the sole basis that Plaintiff had improved on medication. Plaintiff had been on medication for several months before Dr. Urbina had seen him. AR 391, 394, 388, 406. Moreover, Dr. Urbina knew Plaintiff had been on medication as noted in the first visit in January 2014, and in consecutive treatments. AR 405, 404, 403. Rather than rely on Dr. Urbina's assessment, the ALJ relied on his own medical opinion and fashioned a RFC based on his interpretation of the record. This is improper.

Defendant has argued that the ALJ's interpretation of the evidence is consistent with the medical record as whole. The Commissioner relies on the assessments of State agency psychologists Dr. Buerger and Dr. Fiore to support this contention. AR 77-78; 107, 111.

However, the ALJ did not rely on these opinions as part of his analysis and the Court is not permitted to accept post hoc explanations for the ALJ. *Lewin v. Schweiker*, 654 F.2d 631, 634-35 (9th Cir. 1981). A reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner. *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing *Pinto v. Massanari,* 249 F.3d 840, 847 (9th Cir.2001)).

Also problematic is that the ALJ's RFC determination was based on an inadequate evaluation of the record. Specifically, the medical record contained no opinion evidence from any of Plaintiff's treating physicians or a consultative examiner regarding the functional impact of his mental impairments or how taking medication would affect his ability to work. It is well established that a claimant's RFC is "the most [the Claimant] can still do despite [his or her] limitation[s]." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(1). "The assessment of a RFC must be based on all the relevant evidence in [the claimant's] case record." *Id*. Here, it is unclear what portions of the medical records the ALJ was relying on in formulating the RFC.

The Court notes that the ALJ gave substantial weight to the opinion of Dr. Chandler whose report consists of diagnoses and descriptions of her clinical observation of Plaintiff. AR 31; 386. However, she does not indicate the impact those impairments had on Plaintiff's ability to work on a function-by-function basis, in a manner that would provide the ALJ with a sufficient medical foundation to properly consider Plaintiff's RFC. *See Day v. Weinberger*, 522 F.2d 1154, 1155 (9th Cir. 1975) (An ALJ may not make "his own exploration and assessment as to [the] claimant's physical condition."); *Manso–Pizarro v. Secretary of Health and Human Services,* 76 F.3d 15, 17 (1st Cir. 1996) ("With few exceptions, ... an ALJ, as a layperson, is not qualified to interpret raw data in a medical record.").

Further, while the ALJ discussed the medical records regarding Plaintiff's mental impairments improving when taking his medication, it is evident from the ALJ's discussion of that evidence that he came to this conclusion by making an independent medical evaluation. The Commissioner argues that this was not the case because the ALJ cited to treating records in his discussion of Plaintiff's symptoms improving with treatment. (Doc. 24, pg. 7). However, while the treating records reviewed by the ALJ include medical impressions from Plaintiff's treating

9

physicians; those impressions consist of diagnoses and descriptions of Plaintiff's mental impairments. AR 382, 385,388, 406. They do not indicate the impact of medication on those diagnosed impairments, or on Plaintiff's ability to work on a functional basis. Nevertheless, the ALJ reviewed the medical findings in these records and made a determination based on his own interpretation of that raw medical evidence. Such a determination cannot form the basis of an ALJ's RFC conclusion. *See Day,* 522 F.2d at 1156 (the ALJ was not qualified as a medical expert and therefore could not permissibly go outside the record to consult medical textbooks for purpose of making his own assessment of the claimant's physical condition); *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir.1999) ("As a lay person, ..., the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); *Manso–Pizarro,* 76 F.3d at 17; *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir.1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Here there is an absence in the record indicating the degree to which Plaintiff's mental impairments affected him, and what, if any, Plaintiff's medications had on his ability to work. Specifically, the ALJ did not seek to have Plaintiff undergo further examination in light of the positive medication effects, nor did he obtain further review of Plaintiff's treating records by a State agency physician after Plaintiff began taking medication. Although it is Plaintiff's burden to produce full and complete medical records, *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999), when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence, the ALJ has a duty to develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Here, the ALJ did not do so. Instead, he improperly interpreted the treating records that were available and made a RFC determination based on that raw medical data. Accordingly, the ALJ's decision is not supported by substantial evidence. *See Tonapetyan,* 242 F.3d at 1151 (reversing and remanding for further proceedings where ALJ's RFC determination was based on an inadequately developed medical record); *Nguyen,* 172 F.3d at 35 (reversing and remanding for further proceedings where the ALJ rendered a RFC determination based on his own interpretation of raw medical data that was not supported by medical opinion evidence).

## VI. REMAND FOR FURTHER ADMINSTRATIVE PROCEEDINGS

Given the above, the Court must determine whether this action should be remanded to the Commissioner with instructions to immediately award benefits or whether this action should be remanded to this Commissioner for further administrative proceedings. Remand for further proceedings is appropriate when an evaluation of the record as a whole creates serious doubt as to whether the claimant is in fact disabled. *Garrison v. Colvin,* 759 F. 3d 995, 1021 (9th Cir. 2014). Conversely, a court should remand with for an award of benefits when: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* at 1020. Even if all three of these criteria are met, the Court can retain flexibility in determining an appropriate remedy. *Brown-Hunter v. Colvin*, 806 F. 3d 487, 495 (9th Cir. 2015).

In this case, the Court finds that remand for further administrative proceedings is necessary to further develop the record and obtain a better understanding of the effectiveness of Plaintiff's medications, and what effect those medications have on his functional limitations and his ability to work. On remand, the ALJ shall obtain evaluations from appropriate sources to assess Plaintiff's abilities and limitations, and formulate a RFC that incorporates any identified limitations taking into account any medication effects that are present at the time of the re-evaluation.

The Court notes that Plaintiff also contends that the ALJ erred in finding Plaintiff not fully credible. (Doc. 19. Pg. 10). Because the court will remand this action for further development of the medical record, it declines to address this argument at this time.

## VII. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is not supported by substantial evidence in the record as a whole, and is not based on proper legal standards. Accordingly, this Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is

DIRECTED to enter judgement in favor of Plaintiff, Isreal Cortez, and against Carolyn W. Colvin, the Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __**June 23, 2016**__            /s/ Erica P. Grosjean
                                       UNITED STATES MAGISTRATE JUDGE